Mary E. ANDERSON; Marsha L. Arndt; Garth Bender; Wanda M. Bender; Candace R. Bentley; Yvonne M. Bergman; Mary C. Beseke; Plaintiffs–Appellants,

Sandra K. Bethurem; Plaintiff,

Lynne A. Blixt; Terry R. Boblit; Kenneth G. Booth; Marjorie Brennan; Theresa A. Briles; Steven W. Brown; Brigita Celms; Kathleen D. Chose; Carolyn M. Clover; William H. Condon; Darlene H. Decker; Diane J. Demma; Dale A. Doerr; Marsha M. Drake; Plaintiffs–Appellants,

Douglas C. Engler; Plaintiff,

Marcella D. Eskierka; Michael A. Ferraro; Ruby J. Florine; Daniel R. Galazen; Madeline M. Galka; Jean Lee Haggerty; James F. Hannasch; Plaintiffs–Appellants,

Rodney L. Hengesteg; Plaintiff,

Audrey J. Hilton; James T. Hixon; Maudine E. Hogquist; Connie Hohbein; Robert A. Holly; Plaintiffs–Appellants,

Linda L. Iles; Plaintiff,

Joan N. Jensen; Ronald M. Johnson; John E. Jolley; Plaintiffs–Appellants,

Martin J. Kilroy; Plaintiff,

Mary K. Klonglan; Rebecca A. Kowitz; Lisa A. Kosak; Elaine I. Lapp; Mary Joan Larsen; Sandra L. Larson; Linda Latsch; Julius A. Lee; Donna Jean Lindstrom; Robert Lokhorst; Patricia A. Magnuson; Royce L. Manion; Betty Marthaler; Peggy C. McMacken; Devona G. Meinhardt; Plaintiffs–Appellants,

Marlene Meyer; Plaintiff,

Barbra Milon; William C. Milon; Ellen L. Minor; Donald D. Moe; Edward H. Moe; Kathy J. Monteon; Sally A. Neil; Sandra J. Nelson; Virginia Noreen; Carol J. Peterson; Debra Peterson; Patricia A. Piatt; Becky Pickett; David L.

Quigley; Roger W. Raina; Norma Richardson; Donna J. Rieschel; Mary M. Roach; Arlene L. Roepke; Darrel D. Roepke; Dorothy H. Ruckle; Lynn D. Sandhoefner; Lori A. Sandvig; Elizabeth A. Schoon; Steven O. Schultz; Ruth M. Shields; Shirley K. Slagle; John Stech; Carlyle A. Storbakken; Sharelyn M. Swanson; E. Irene Theis; Janet E. Thompson; Kay R. View; Ronna Waterman; Maureen A. Weber; Plaintiffs–Appellants,

Barbara Zweiacher, Plaintiff,

v.

RESOLUTION TRUST CORPORATION, as receiver and as conservator for Midwest Federal Savings and Loan Association of Minneapolis; Resolution Trust Corporation, as receiver and as conservator for Midwest Savings Association, P.A.; Midwest Federal Savings and Loan Association of Minneapolis; Midwest Savings Association, F.A.; Resolution Trust Corporation; Resolution Trust Corporation, in its corporate capacity; Midwest Federal Savings and Loan Association of Minneapolis; Midwest Savings Association, F.A., as plan administrators of the 1986 Midwest Federal Savings and Loan Association of Minneapolis Pension Plan; Edward G. Wollerman, in his capacity as plan administrator of the 1986 Midwest Federal Savings and Loan Association of Minneapolis Pension Plan; 1986 Midwest Federal Savings and Loan Association, of Minneapolis Pension Plan, Defendants–Appellees.

No. 94–3415MN.

United States Court of Appeals, Eighth Circuit.

Submitted May 17, 1995.

Decided Sept. 29, 1995.

Stanley Efron, argued, Minneapolis, Minnesota (Stephen L. Hopkins and Cassandara Phillips Chaffee, on the brief), for appellants.

Jeffrey Stephenson, argued, Minneapolis, Minnesota (John E. Yanish, on the brief), for appellees.

Before FAGG, WOOD, Jr.,* and JOHN R. GIBSON, Circuit Judges.

FAGG, Circuit Judge.

In this dispute over pension benefits, former employees of a defunct savings and loan appeal the district court's adverse grant of summary judgment on their claims under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1461 (1988). We affirm in part and remand in part.

Until it ceased operations in 1990, Midwest Savings Association, F.A. (Midwest Savings) was a federally chartered savings and loan based in Minneapolis, Minnesota. Midwest Savings provided employee pension benefits through a defined benefit pension plan that received favorable tax treatment. Under the Tax Reform Act of 1986 (TRA '86), Midwest Savings needed to amend the pension plan to retain the plan's tax-favored status. *See* 26 U.S.C. § 401(a)(5) (1988). Recognizing TRA '86 required major changes to some existing pension plans, the Internal Revenue Service (IRS) issued several model pension plan amendments that employers could adopt on a temporary basis "to provide time to review regulations and make decisions about benefit program redesign without incurring impractical costs in order to comply with [TRA '86]." I.R.S. Notice 88–131, 1988–2 C.B. 546. In 1989, Midwest Savings amended its pension plan by adopting IRS Model Amendment Three, which suspended benefit accruals for all pension plan participants beginning January 1, 1989. The 1989 plan amendment allowed Midwest Savings to decide at a later time how pension benefits for the period of the suspension would be calculated. *See id.* According to an IRS Announcement, the amendment even gave Midwest Savings the option to provide no pension benefits at all for the period of the

---

* The Honorable Harlington Wood, Jr., United States Circuit Judge for the Seventh Circuit, sitting by designation.

suspension. *See* I.R.S. Announcement 91–11, 1991–4 I.R.B. 80.

Due to insolvency, Midwest Savings was eventually placed under the conservatorship of the Resolution Trust Corporation (RTC). The RTC managed the operations of Midwest Savings and assumed responsibility for the pension plan. The RTC hired Edward G. Wollerman to be Midwest Savings's managing agent and the pension plan administrator. After efforts to improve Midwest Savings's financial position or sell the savings and loan failed, the RTC was appointed as receiver to liquidate Midwest Savings. Midwest Savings ceased operations in October 1990 and all the employees were terminated. The RTC terminated the pension plan effective December 31, 1990. Relying on the 1989 plan amendment adopting Model Amendment Three, the RTC also decided not to pay any pension benefits for 1989 or 1990. The RTC formalized the decision not to pay benefits for 1989 or 1990 in a 1991 pension plan amendment.

A large group of the terminated employees then filed this lawsuit, contending Midwest Savings and the federal regulators violated ERISA by failing to give notice of the pension plan amendments, violating the terms of an ERISA-governed pension plan, and breaching fiduciary duties to the pension plan participants. The district court granted the defendants summary judgment. On appeal, the employees only challenge the grant of summary judgment to three of the defendants below: Wollerman, the pension plan, and the RTC in its capacity as receiver of Midwest Savings. We remand one breach of fiduciary duty claim for further consideration by the district court, but otherwise affirm the grant of summary judgment.

■ The employees first contend the RTC violated section 204(h) of ERISA, 29 U.S.C. § 1054(h) (1988), by failing to notify plan participants about the 1989 adoption of Model Amendment Three and the 1991 plan amendment that retroactively provided employees would receive no pension benefits for 1989 and 1990. We conclude the RTC was not required to give notice of these amendments.

Under ERISA section 204(h), "[a defined benefit plan] may not be amended … to provide for a significant reduction in the rate of future benefit accrual, unless, after adoption of the plan amendment and not less than [fifteen] days before the effective date of the plan amendment, the plan administrator provides a written notice, setting forth the plan amendment and its effective date, to … each participant in the plan…." 29 U.S.C. § 1054(h)(1). The 1991 amendment to Midwest Savings's pension plan does not even fall within the scope of section 204(h), because the 1991 amendment did not affect "the rate of future benefit accrual." The 1991 amendment only affected benefits for past years, 1989 and 1990. Unlike the 1991 amendment, the 1989 plan amendment adopting Model Amendment Three suspended future benefit accruals and appears to trigger section 204(h)'s notice requirement. According to the IRS Notice setting out Model Amendment Three and IRS Revenue Procedure 89–65, however, employers who adopted Model Amendment Three were not required to give notice about the amendment under section 204(h) unless the employers continued the suspension of benefit accruals beyond the last day of the 1990 pension plan year. *See* Rev.Proc. 89–65, 1989–2 C.B. 786; I.R.S. Notice 88–131, 1988–2 C.B. 546. The employees do not dispute the district court's conclusion that the IRS publications are binding. Based on these publications, the RTC was not required to give notice of the 1989 plan amendment because the RTC did not continue the suspension of accruals beyond December 31, 1990, the end of the pension plan's 1990 plan year. The RTC terminated the pension plan effective December 31, 1990, and after the pension plan terminated, there were no further accruals to suspend. Because the employees' notice claims fail as a matter of law, summary judgment on these claims is proper.

■ The employees also claim that in addition to the written pension plan, the RTC established an informal, unwritten pension plan providing benefit accruals for 1989 and 1990. According to the employees, the RTC established the unwritten plan through various informal communications with the employees. The employees argue the unwritten plan should be enforced under ERISA, and

the RTC breached the unwritten plan in violation of ERISA when the RTC refused to pay pension benefits for 1989 and 1990.

We recognize some courts have held unwritten, informal pension plans may be enforceable under ERISA. *See, e.g., Kenney v. Roland Parson Contracting Corp.*, 28 F.3d 1254, 1257 (D.C.Cir.1994); *Henglein v. Informal Plan for Plant Shutdown Benefits for Salaried Employees*, 974 F.2d 391, 401 (3d Cir.1992); *Donovan v. Dillingham*, 688 F.2d 1367, 1372 (11th Cir.1982) (en banc). Enforcing an unwritten plan providing the former Midwest Savings employees with benefit accruals for 1989 and 1990, however, would have the same effect as modifying the terms of Midwest Savings's written pension plan, which provided no accruals after 1988. In the context of an equitable estoppel claim, we have rejected the argument that oral or informal communications by an employer can modify the provisions of a written ERISA plan. *See Slice v. Sons of Norway*, 34 F.3d 630, 634–35 (8th Cir.1994). Indeed, "[m]ost courts have held that ERISA precludes oral or informal amendments to a plan, by estoppel or otherwise." *Jensen v. Sipco, Inc.*, 38 F.3d 945, 953 (8th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1428, 131 L.Ed.2d 310 (1995); *see, e.g., Henglein*, 974 F.2d at 401. Because we believe the employees' assertion of an unwritten plan is essentially an attempt to show that informal communications by RTC personnel modified the written pension plan, we reject the employees' unwritten plan argument.

■ We now turn to the employees' breach of fiduciary duty claims. The employees contend the RTC and Wollerman breached fiduciary duties to the employees by choosing not to provide pension benefits for 1989 and 1990, failing to inform employees about the suspension of pension benefit accruals, and misrepresenting the status of the employees' pension benefits. ERISA requires fiduciaries of pension plans to act in the best interest of the plan participants. *See* 29 U.S.C. § 1104(a)(1) (1988 & Supp. V 1993). Employers administering ERISA plans do not always act in the role of plan fiduciaries, however. " '[T]he ERISA scheme envisions that employers will act in a

dual capacity as both fiduciary to the plan and as employer. ERISA does not prohibit an employer from acting in accordance with its interests as employer when not administering the plan or investing its assets.' " *Hickman v. Tosco Corp.*, 840 F.2d 564, 566 (8th Cir.1988) (quoting *Phillips v. Amoco Oil Co.*, 799 F.2d 1464, 1471 (11th Cir.1986), *cert. denied*, 481 U.S. 1016, 107 S.Ct. 1893, 95 L.Ed.2d 500 (1987)). The district court correctly concluded Wollerman and the RTC were acting as employers rather than fiduciaries when they participated in amending and terminating the pension plan. "The decision to [amend and] terminate the [p]lan was a business decision that properly rested with [the RTC]." *Cunha v. Ward Foods, Inc.*, 804 F.2d 1418, 1432 (9th Cir.1986). "[A]n employer's decision to amend or terminate an employee benefit plan is unconstrained by the fiduciary duties that ERISA imposes on plan administration." *Hozier v. Midwest Fasteners, Inc.*, 908 F.2d 1155, 1162 (3d Cir. 1990).

■ The RTC's communications to the plan participants about pension benefits, on the other hand, are subject to ERISA's fiduciary standards. *See Howe v. Varity Corp.*, 36 F.3d 746, 753–54 (8th Cir.1994), *cert. granted,* —— U.S. ——, 115 S.Ct. 1792, 131 L.Ed.2d 720 (1995); *Fischer v. Philadelphia Elec. Co.*, 994 F.2d 130, 135 (3d Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 622, 126 L.Ed.2d 586 (1993). "There is no question but that ... answering questions about a plan, noting changes in the plan, [and] disseminating information directly to plan participants concerning their rights within the plan ... are classic fiduciary activities." *Pickering v. USX Corp.*, 809 F.Supp. 1501, 1567–68 (D.Utah 1992). ERISA fiduciaries are prohibited from materially misleading plan participants, and fiduciaries sometimes have a duty to disclose information. *Wilson v. Southwestern Bell Tel. Co.*, 55 F.3d 399, 405–06 (8th Cir.1995); *Howe*, 36 F.3d at 753– 54. Because we have already decided the RTC's failure to disclose the suspension of benefit accruals was lawful under the applicable ERISA notice provision, the failure to disclose cannot be a breach of fiduciary duty. *See Porto v. Armco, Inc.*, 825 F.2d 1274, 1276

(8th Cir.1987), *cert. denied,* 485 U.S. 937, 108 S.Ct. 1114, 99 L.Ed.2d 274 (1988). The employees assert more than a simple failure to disclose, however. They claim that during informational meetings and in written bulletins issued after accruals were suspended, RTC personnel led the employees to believe benefits were still accruing by stating all benefits were "intact" or "unchanged" and the RTC was meeting ERISA funding obligations. In their answers to interrogatories, some employees assert Wollerman actually told them pension benefits were accruing. The district court did not address the employees' claim that the alleged misrepresentations and misleading statements constituted a breach of fiduciary duty under ERISA, and we believe the district court should consider this fact-intensive issue in the first instance. Accordingly, we remand this claim.

Having reviewed de novo the district court's grant of summary judgment to Wollerman, the pension plan, and the RTC as receiver, we remand the employees' claim that Wollerman and the RTC violated their fiduciary duties under ERISA by giving the employees false or misleading information. In all other respects, we affirm the grant of summary judgment.