# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 96-2063

_____

Curtis Duffie,                              *
                                            *
          Plaintiff-Appellant,              *
                                            *
     v.                                     *   Appeal from the United States
                                            *   District Court for the
Deere & Company; The Disability             *   Northern District of Iowa.
Benefit Plan for Hourly and                 *
Incentive Paid Employees for                *        [PUBLISHED]
Deere & Company,                            *
                                            *
          Defendants-Appellees.             *

_____

Submitted:  December 13, 1996

Filed:  April 9, 1997

_____

Before BOWMAN and LAY, Circuit Judges, and STROM,[1] District Judge.

_____

PER CURIAM.

Curtis Duffie brought this action against his former employer, Deere & Company, pursuant to 29 U.S.C. § 1132, part of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1101 et seq.  Duffie appeals the district court's decision to affirm the Plan Administrator's denial of disability benefits under Deere's Plan for Hourly and Incentive Paid Employees.

_____

[1]The Honorable Lyle E. Strom, United States District Judge for the District of Nebraska, sitting by designation.

The district court affirmed Deere's denial of benefits in a cursory opinion, finding that Duffie was not unable to perform and attend his job due to any sickness or injury. The court concluded that the "plaintiff failed to prove by a preponderance of the evidence that he was totally disabled within the meaning of the Plan prior to the termination of his employment." Duffie v. Deere & Co., No. C93-1025, slip op. at 2-3 (N.D. Iowa Mar. 22, 1996).

Though Deere argues otherwise, the Plan Administrator's decision should not be reviewed under the arbitrary or capricious standard. That standard is used only when a plan administrator has discretionary authority to determine eligibility for benefits or to construe the terms of the plan. Firestone Tire & Rubber v. Bruch, 489 U.S. 101, 115 (1989). The plan here does not provide the Plan Administrator with this power. The district court properly reviewed the claim de novo, making findings of fact and conclusions of law. We review the district court's findings of fact (which, in this case, includes only one finding) under the clearly erroneous rule. Greater Kan. City Laborers Pension Fund v. Superior Gen. Contractors, Inc., 104 F.3d 1050, 1054 (8th Cir. 1996).[2]

Background

Curtis Duffie had been employed in various positions at Deere for twenty-one years, when in 1988 Deere terminated his employment, citing Duffie's chronic tardiness and absenteeism as its reason. From 1967 through 1988, the term of Duffie's employment with Deere, he repeatedly missed work, most often for medical reasons. Deere's "Absence Occurrences" chart reflects that Duffie took approximately

---

[2]Although Deere raises the jurisdictional argument that Duffie failed to exhaust his remedies, we agree with the district court's rejection of such a claim on the ground that Deere, notwithstanding the failure to exhaust, acquiesced in Duffie's appeal procedure.

2

194 weeks of medical leave: thirty-two weeks for injuries and pain in his back, neck, and shoulders; thirty-one weeks for stomach problems; nineteen weeks for elbow surgery; thirteen weeks for depression; twelve weeks for hypertension; eleven weeks for a jaw fracture; ten weeks for depression headaches; eight weeks for foot surgery; seven weeks for carpal tunnel surgery; five weeks for headaches; four weeks for rib surgery; four weeks for a burned hand; and thirty-eight weeks for miscellaneous illnesses and reasons.[3] App. at 243. Duffie's medical records show that at the time of his termination in 1988, he suffered from arthritis, fibromyalgia (a chronic musculoskeletal pain syndrome), neuropathy and carpal tunnel syndrome (both syndromes affecting the nerves), headaches, depression, substance abuse (alcoholism), and Post Traumatic Stress Disorder.

In December 1981, Deere held an "unemployable" conference with Duffie, where Duffie was told his absenteeism rate was fifty percent, and that he needed to "get his medical problems under control." Record of Unemployable Conference (Dec. 11, 1981), App. at 233. A Deere representative told Duffie that if his attendance did not improve, he would be terminated. Id. When the absences continued, a Deere representative held a second unemployable conference in March 1984. The representative told Duffie that his absenteeism rate was fifty-three percent, and if absenteeism continued, "a third conference would eventually be held and at that

---

[3]These figures are rough but conservative approximations from Deere's chart. Duffie's brief estimates that he "was on medical leave for approximately 1400 days from 1975 through 1988 due to a variety of medical problems." Appellant's Br. at 3. The brief also notes that while this number includes non-work days such as weekends and holidays, it does not include shorter-term absences. Id. at 3 n.1. Apparently, the "Absence Occurrences" chart sets out only Duffie's medical leave, and not his individual sick days or tardiness.

time a disciplinary action hearing would be convened and he would be terminated." Record of Unemployable Conference (March 12, 1984), App. at 234. In March 1985, Deere management conducted another conference with Duffie, which was not termed an unemployable conference, but rather was held to "review [Duffie's] absenteeism and current status." Record of Conference (March 14, 1985), App. at 235. At that meeting, Duffie expressed his desire to enter an inpatient alcohol treatment program, but management told him that outpatient treatment would be "best suited to his current situation" because of his absenteeism rate. Id. Deere terminated Duffie from work in April 1987, but rehired him under a "last chance agreement" in August 1987. Under the agreement, Duffie could return to work on probationary status, but with the understanding that continued attendance problems would result in termination. He missed 170.75 hours of work after signing this agreement, and was finally terminated June 22, 1988, due to his "accumulation of absences." Record of Disciplinary Action (June 22, 1988), App. at 239, 241.

In March 1992, Duffie sought disability benefits under Deere's Disability Benefit Plan for Hourly and Incentive Paid Employees (the Plan). In June 1992, Deere denied Duffie's application for benefits. Duffie requested the United Automobile, Aerospace and Agricultural Implement Workers of America (the Union), to which he had belonged while he was employed at Deere, to appeal the decision. The Union refused. Deere then gave Duffie permission to appeal individually to the Plan Administrator. The Plan Administrator denied Duffie's appeal, determining that none of his conditions, "alone or coupled with others," prevented Duffie from doing his job. Duffie argued to the Plan Administrator that despite his apparent ability to perform his job, he was, due to his health problems, unable to attend his job, and was thereby disabled under the Plan. The Plan Administrator rejected this argument,

4

concluding that even "without considering absences related to illness and/or injury, Claimant had a deplorable attendance record -- a record justifying disciplinary action under the circumstances of his case." Review of Denied Claim for Disability Benefits (March 31, 1993), at 16. According to the Plan Administrator, Duffie's absences were due not to his various maladies, but instead to his "irresponsibility."  Id. at 18.

Findings of the District Court

Under Federal Rule of Civil Procedure 52(a), trial courts should and must "state legal and factual conclusions sufficient to give an appellate court a clear understanding of the grounds of its decision."  White Indus., Inc. v. Cessna Aircraft Co., 845 F.2d 1497, 1499 (8th Cir. 1988).  If an appellate court does not know what facts the trial court took into consideration in drawing its conclusions, its findings become suspect.  See Atlantic Thermoplastics Co. v. Faytex Corp., 5 F.3d 1477, 1479 (Fed. Cir. 1993) (remanding because the district court's findings were "too conclusory and sparse" to provide a factual basis for appellate review); EEOC v. United Va. Bank/Seaboard Nat'l, 555 F.2d 403, 406 (4th Cir. 1977) (holding that appellate review is precluded when "the trial court provides only conclusory findings, illuminated by no subsidiary findings or reasoning on all the relevant facts").

The only critical fact the district court found states as follows: "Plaintiff was not, by sickness or injury, rendered unable to attend and perform the duties of his occupation prior to his termination from employment on June 22, 1988."  Duffie v. Deere & Co., No. C93-1025, slip op. at 2 (N.D. Iowa Mar. 22, 1996).  Because the district court provided no support or additional findings, we hold that this finding is clearly erroneous.  The

record is overwhelmingly contrary to the district court's conclusory finding.

The record shows that Duffie had approximately forty-five doctor visits between July 23, 1987 (the date of the last chance agreement), and June 22, 1988 (the date he was terminated).  Of the total 170.75 hours of documented absences occurring after the last chance agreement, the record is undisputed that 132.5 hours were related to illness, including 36.5 hours missed for the flu and 88 hours missed for a broken ankle.  Duffie was ultimately terminated for his "accumulation of absences."  The record is replete with corroboration of Duffie's visits to physicians -- often the Deere physician -- during this period.  Duffie saw a Deere physician for degenerative ailments related to knee, elbow, back and neck problems throughout February 1988.  Duffie phoned a Deere physician concerning his shoulder pain on June 22, 1988, the day of his discharge.  Deere consistently referred to Duffie's medical problems when discussing his absenteeism.[4]  The medical record in this case is voluminous; there can be little reasonable doubt that Duffie's absenteeism was causally related to Duffie's numerous medical problems.

Additionally, there should be little doubt that the district court's conclusion that Duffie was not disabled within the meaning of the Plan directly followed from its finding that he was not rendered unable to attend his job by reason of his illnesses.  Since the underlying factual finding is clearly erroneous, we think it procedurally judicial to remand the case to the district court to decide again the ultimate issue of whether Duffie is disabled

---

[4]The record also indicates that Duffie's musculoskeletal difficulties caused him pain when he was working, and that his work as a forklift driver exacerbated the pain.  See, e.g., App. at 46 (setting out Duffie's testimony).

under the Plan, making further factual findings to support its determination.  For us to proceed to the ultimate issue of disability with no factual findings as our basis would violate this court's function, which is to review, rather than to make, findings of fact.  See <u>Atlantic Thermoplastics</u>, 5 F.3d at 1479 ("This court must review factual findings made by the district court; it may not guess at findings left unmade. Fact-finding by the appellate court is simply not permitted.") (citing <u>Anderson v. City of Bessemer City</u>, 470 U.S. 564, 573 (1985)).[5]

Thus, we remand to the district court for a de novo review of the issue of Duffie's disability under the Plan as of the date of his last termination.  The court must apply the law of the case, bearing in mind that this court holds the earlier determination that Duffie was not rendered unable to attend his job to be clearly erroneous.

The district court shall make its findings and certify such findings within ninety days to the clerk of this court.

IT IS SO ORDERED.

---

[5]We are cognizant that the Plan Administrator conceded that the test for disability under the Deere Plan is substantially the same as the standard followed by the Social Security Administration.  All parties agree that upon the date of termination, Duffie had been found to be "totally disabled" by the Social Security Administration, and not capable of undertaking substantial gainful activity.  We are also cognizant, however, that Deere was not privy to that litigation, and although the award of benefits and finding of the Social Security Administration is admissible evidence in this case to support Duffie's claim, it is not binding against Deere.

A true copy.

Attest:

      CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.